# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT LOUISVILLE

**CHARLES ALFRED RAMSEY, JR.**                                                            **PLAINTIFF**

**v.**                                                                                **CIVIL ACTION NO. 3:09-CV-546-DW**

**DILLARD'S, INC., et al.**                                                             **DEFENDANTS**

## MEMORANDUM OPINION

This employment discrimination action by Plaintiff Charles Ramsey, Jr., *pro se*, is now before the Court on the motion of the Defendants for summary judgment pursuant to Rule 56(c)(2). (DN 23). Plaintiff has filed a response to the motion (DN 26) and has been afforded 60 days of additional time to obtain affidavits in support of his response (DN 27). The additional time has now expired without plaintiff submitting any further evidentiary support or requesting additional time to do so. Accordingly the matter now stands submitted to the Court for final review[1].

*The Material Facts*

Ramsey, a former employee of Dillard's Inc., sued his employer, its St. Matthews store manager, Bob Mayborg, and three of his former co-workers (Terri Bredeson, Theresa Kaiser and "Mary"[last name unknown]) for gender discrimination that Ramsey claims led to his constructive discharge from employment on Jan. 23, 2009. He is seeking to recover $1.5 million in damages related to the psychological trauma he claims that he endured as a result of the hostile work environment imposed on him by the defendants during the three months he worked for Dillard's. The following facts are found in Plaintiff's deposition testimony.

---

[1]The parties have consented pursuant to 28 U.S.C. § 636(c) to proceed before the Magistrate Judge as if they were proceeding before the District Court.

Ramsey began his employment with Dillard's at the St. Matthews Mall in Louisville, Kentucky, on Nov. 3, 2008. Dillard's hired Ramsey as a sales associate in the home furnishings department of the store. The department was managed by Theresa Kaiser, who was Ramsey's immediate supervisor. Her supervisor in turn was store manager Bob Mayborg. Ramsey's co-workers in the home furnishings department included both Terri Bredeson and Mary. Ramsey himself was not the only male employee at Dillard's during this time, although he maintains that he was the only full-time male employee at the store.[2]

Ramsey primarily complains of three incidents of allegedly gender-based discrimination involving him that occurred during the almost three months he worked at Dillard's.[3] According to him, on Nov. 7, 2008, less than one week after he began employment, the cash register that he primarily used in the home furnishings department was taken out of service and remained out of service thereafter. A note placed on the register indicated that the department store was awaiting the arrival of a part needed to repair it. Other than the broken register, the department had two other functioning cash registers available for Ramsey to use.

Ramsey maintains that he went to his supervisor, Kaiser, and asked her why it was taking so long for the needed part to arrive. Kaiser, according to Ramsey, never would

---

[2] Other male part-time Dillard's employees then included Jim Burkman, David Carney, Nicholas George, Brian Moffatt, and James Southerland.

[3] Ramsey in his hand written response relates partially observing several other instances of alleged harassment of male employees by female Dillard's employees in his department (DN 26, pp. 3-5).. Ramsey concedes, however, that he could not fully overhear the exchanges that he witnessed across the store sales floor. In a another instance he relates an alleged confrontation between a female and male co-worker over a merchandise shipping delay, as told to him by the male employee involved. In none of these instances has Ramsey produced an affidavit of any of the affected male employees, nor any other evidence to support his version of those events. Just as importantly, Ramsey does not claim to have been involved personally in any of them.

directly answer his question. He found her nonresponse to be troubling as the absence of this third register, which Ramsey had routinely used, was "an extreme inconvenience...." Ramsey claims this delay in repair as his first example of gender discrimination.

The next incident occurred on Jan. 19, 2009. On that date Ramsey was attempting to finalize a large sale with a Dillard's customer. He maintains that as he talked with the customer on the sales floor, his co-worker Mary publicly yelled at him "to come over here right now" so that he could wait on a different customer. Ramsey considered Mary's public order to be highly unprofessional. Because he was upset by the manner in which Mary acted, Ramsey went to the store manager's office to discuss the matter with Bob Mayborg and his department manager, Ms. Kaiser.

Ramsey explained to Mayborg and Kaiser that he was in the middle of attempting to conclude a $1,000 sale with his customer when Mary interrupted him. Ramsey added that working at Dillard's had been a troubling experience for him and that he felt a "hateful atmosphere" in the store. According to Ramsey, Kaiser then responded that if Ramsey felt a hateful atmosphere, he should sever his ties with Dillard's. Mayborg apparently said nothing in response, which led Ramsey to feel "hurt" that the store manager did not support him or tell his immediate supervisor that Ramsey was a quality employee. Mayborg instead merely told Ramsey to return to the sales floor and complete his sale. This incident, according to Ramsey, was the only time that he ever spoke directly to Mayborg to complain about the manner in which he was being treated by his co-workers. Mayborg did follow up with Ramsey the following day and advised him that if Ramsey felt he was being treated unprofessionally by a co-worker, he should simply walk away. Ramsey responded to Mayborg that he did not believe such incidents

would happen again because he now believed that both Kaiser and Mary realized they had acted unprofessionally the previous day.

The final incident at Dillard's involving Ramsey occurred three days later on Jan. 22, 2009. Ramsey on that occasion had been making price adjustments on merchandise in his section of the department. Unlike Bredeson, who has three co-workers to help her with price adjustments in her own section of the department, Ramsey had no one to help him so that he was forced to perform all of his normal sales duties *and* make price adjustments as well. As a result, he could not complete all of the adjustments as quickly as Bredeson, with help, had done. According to him, co-worker Terri Bredeson openly "berated" him for his failure to complete that day's price adjustments. Ramsey recalls that Bredeson publicly proclaimed on the sales floor, "This is all you've done?! Is it that you don't understand it? It's very simple. Why can't you understand it?!"

Ramsey maintains that Bredeson, as a co-worker, should have taken up any problem that she had with his performance with her department supervisor rather than publicly criticize him on the sales floor of the store. Ramsey, however, acknowledged that he never discussed this incident with his supervisors, but instead "kept it a secret." No evidence of record suggests that Mayborg or Kaiser was aware of this incident at the time it occurred.

The final incident had immediate and dramatic effect on Ramsey. Ramsey explains that he was so upset by Bredeson's unprofessional actions that he sat outside in his automobile at the end of his shift that day unable to drive away from Dillard's until he regained his composure. In his words, Ramsey's body was "just wrecked." He was shaken, had trouble breathing and "felt terrible." The following day, Ramsey obtained a doctor's excuse to remain

4

off work until Jan. 26, 2009.

Ramsey in the interim went directly from work to an immediate care medical center nearby where he was examined by a Dr. Chraganlale , who advised him that he was suffering from severe work-related stress due to exposure to a hostile work environment. At Dr. Chraganlale's advice, Ramsey sought counseling with Dr. John Miller on Monday, Jan. 26. According to Ramsey, Dr. Miller confirmed the diagnosis of severe stress arising from a hostile work environment. The doctor further explained to Ramsey that his female co-workers at Dillard's ( Theresa Kaiser, Mary and Terri Bredeson) are "power women" a type of women who think only about power and control. Dr. Miller advised Ramsey to avoid such persons at all costs. Consequently, Ramsey did not return to work at Dillard's. Instead, on March 23, 2009, he filed a complaint with the Equal Employment Opportunity Commission (EEOC) alleging gender discrimination and constructive discharge.

In his EEOC complaint, Ramsey alleged that he had been subjected to gender-based harassment that forced him to quit his job at Dillard's in violation of Title VII of the Civil Rights Act of 1964. Upon consideration of the complaint, the EEOC was unable to conclude the violation of law had occurred. It issued Ramsey a dismissal and notice of rights letter on June 10, 2009. The following month, on July 30, 2009 Ramsey filed suit against Dillard's, its manager at the St. Matthews store, his immediate supervisor and co-workers. Ramsey attached to his Title VII complaint a handwritten explanation of his claims. In the explanation, Ramsey expressed the view that his immediate supervisor and co-workers had engaged in a concerted effort to run him off from employment at Dillard's. Ramsey also related the failure of the store manager to take action about the matter following Ramsey's initial incident on Nov. 7, 2008.

5

Ramsey as noted earlier seeks to recover $1.5 million from the Defendants as restitution for the violation of his rights arising until Title VII.

*Standard of Review*

Defendants have filed a motion for summary judgment on all claims pursuant to Fed. R. Civ. P. 56. Rule 56(c)(1)(A) provides that a party who asserts that a fact is genuinely disputed "must support the assertion by citing to . . . materials in the record including depositions, . . . affidavits or declarations, stipulations, . . . admissions, interrogatory answers or other materials."[4] Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The same Rule continues in subsection (e) to provide that if a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, the court may . . . grant summary judgment if the motion and supporting materials– including the facts considered undisputed– show that the movant is entitled to it...." Fed. R. Civ. P. 56(e).

In *Celotex*, the Supreme Court explained nearly 25 years ago that:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning essential elements of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

---

[4] The quoted language of the Rule is taken from the current version of Rule 56, which became effective absent contrary Congressional action on December 1, 2010.

6

*Celotex Corp.*, 447 U.S. at 322-23.

Not all factual disputes will be *material* under the rule. The substantive law at issue identifies those facts that are material to a party's claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Only disputes over a fact that may affect the outcome of the suit under the governing law will prevent the entry of summary judgment. *Id; Sigly v. City of Parma Heights*, 437 F.3d 527, 532-33 (6th Cir. 2006). Disputes that involve irrelevant or unnecessary facts are not a bar to relief under the rule. Id. For a dispute of material fact to be "genuine" it must concern evidence on which a jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248; *Morales v. America Honda Motor Co.*, 71 F.3d 531, 536 (6th Cir. 1995).

In considering a motion for summary judgment, the Court must examine the facts in a light most favorable to the nonmoving party, in this instance Mr. Ramsey. *Pavlovich v. National City Bank*, 435 F.3d 560, 564 (6th Cir. 2006) ( "We must take the facts in the light most favorable to the non-moving party.") (citing *Brumbalough v. Camelot Care Centers, Inc.*, 427 F.3d 996, 1000) (6th Cir. 2005). All reasonable inferences are to be drawn in the favor of the nonmovant. *Demski v. U.S. Dept. of Labor*, 419 F.3d 488, 491 (6th Cir. 2005).

Once the movant Dillard's has met its burden to show the absence of evidence to support the case of the nonmoving party, *Celotex Corp.*, 477 U.S. at 325, the nonmoving party Ramsey may not rest on his pleadings to defeat the motion. *Anderson*, 477 U.S. at 248-49; *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (*per curiam*). Instead, the nonmovant must go beyond the pleadings and show by affidavit, deposition, answers to interrogatories, or admissions that specific disputed material facts raise a genuine issue for trial. *Celotex Corp.*,

7

477 U.S. at 324. In other words, the nonmoving party must do more than show that there is some metaphysical doubt about the material facts. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In the words of *Anderson*, 477 U.S. at 252, "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." If the evidence is so one-sided that one party must prevail as a matter of law, summary judgment should be granted. *Id; Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005) ("Where there is not sufficient evidence for a jury to return a verdict for the non-moving party, summary judgment should be granted.")

*Gender Based Discrimination.*

Absent direct evidence of discrimination, a plaintiff who seeks to establish a claim for employment discrimination based on his gender must first establish a *prima facie* case. *Leadbetter v. Gilley*, 385 F.3d 683, 690 (6th Cir. 2004). Such a *prima facie* case of discrimination requires the plaintiff to show that: (1) he is a member of a protected class; (2) he was qualified to perform and did perform the duties of his position; (3) despite his satisfactory performance an adverse employment action was taken against him **based on his male gender**; and (4) other similarly situated female employees, who engaged in similar conduct to that of the plaintiff, did not suffer adverse employment action. *See, McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Sutherland v. Mich. Dept. of Treas.*, 344 F.3d 603, 614 (6th Cir. 2003).

Once the plaintiff makes his *prima facie* case, the burden of production will shift to the defendant employer to offer a legitimate, non-discriminatory reason for the adverse

8

employment action.  *See, Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).  If the defendant employer meets this burden, then the burden of production will shift back to the plaintiff to show that the proffered nondiscriminatory reason offered by the employer is a mere pretext for gender-based discrimination.  *Id*.  To meet this shifting burden, plaintiff must come forward with sufficient evidence to persuade the court that the asserted justification for the employer's action in fact is false.  *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000).  Throughout this process the burden of proof remains with the plaintiff to persuade the finder of fact that gender discrimination in employment has occurred.

Examination of the record in this case conclusively demonstrates that Ramsey has failed to establish a *prima facie* case for discrimination based on his gender.  The record contains no evidence on which a reasonable juror could find that Ramsey was treated any differently than the female employees in Dillard's home furnishings department.  In fact, the three primary incidents that Ramsey complains of, even when examined in a light most favorable to his case, collectively fail to support a reasonable inference that any of the events occurred because Ramsey was a male rather than a female employee.  Indeed, as the Defendants point out, when asked point blank why he believed that co-worker Mary yelled at him, Ramsey responded during his deposition, "I don't know."  At most, he simply knows that on two occasions female employees in his department publicly yelled at him.  Consequently, Ramsey merely assumes that they did so because he was a man.

Other than this opinion, Ramsey has no facts to support his personal view of the matter.  Certainly, he offers nothing in the way of evidence to show that other male employees at Dillard's were also treated abruptly by female employees merely because of their male gender.

9

To the contrary, Dillard's points out that at least one of Ramsey's male co-workers in effect received a transfer to another department within the store during this time period. Finally, Ramsey also acknowledged during his deposition that he had no knowledge that the store's manager, Bob Mayborg, treated male employees such as Ramsey, worse than similarly situated female employees. At most, Ramsey simply maintains that he never personally saw any of his female co-workers in the department yelled at during the time that he was employed there from Nov. 3, 2008, until Jan. 23, 2009.

Accepting the truth of this statement, it does not support a reasonable inference of discrimination. The fact that Ramsey did not see any conflict between female co-workers does not automatically mean that his personal conflicts with female co-workers occurred due to his gender. First, the jury might reasonably infer from the circumstances that Ramsey's co-workers simply took a dislike to him for reasons unrelated in any respect to his gender. For example, the incident involving co-worker Bredeson suggests that she was upset with Ramsey due to her perception, right or wrong, of the insufficient performance of his work. In other words, the basis for her rude comments was his failure to complete the daily price changes in a timely manner. Her comments to Ramsey would most naturally support such an inference.

Likewise, the public summons by co-worker Mary would most naturally seem to be based upon her need for customer assistance rather than Ramsey's gender. Certainly, such an inference is far stronger than the one that Ramsey relies on to support his Title VII claim of gender discrimination. Finally, the Court deems it highly unlikely that a reasonable juror could conclude that store manager Mayborg's actions in advising Ramsey to simply "walk away" from such confrontations in some fashion indicated the existence of gender discrimination on the part

10

of Mayborg. No such inference can be reasonably drawn as such advice is a typical solution that is routinely offered up in the context of disputes, whether they occur in the employment setting or not.

The Court also strongly believes that no reasonable juror would draw an inference of gender discrimination based upon the unrepaired cash register. The delay in receipt of the repair part for the register appears to be the most probable reason that the register remained down for as long as it did. Ramsey has offered no proof otherwise or any proof for that matter other than his own deposition. The existence of two other functioning cash registers in the department, both of which were available to Ramsey to use, also strongly suggests that the inconvenience visited upon Ramsey had little to do with his gender as his job performance could not be effectively sabotaged by merely deactivating one of the three registers.

Ramsey's attempt to make a *prima facie* case also fails to the extent that he has not shown that he suffered a materially adverse change in either the terms or the conditions of his employment as a result of the actions he complains of. *See, Ford v. General Motors Corp.*, 305 F.3d 545, 553 (6th Cir. 2203) (citing *Hollins v. Atlantic Co.*, 198 F.3d 652, 662 (6th Cir. 1999) ("A materially adverse change [in the terms and conditions of employment] might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less desirable title, a loss of material benefits, significantly diminished material responsibilities....").

Ramsey was not discharged from employment, denied a promotion, reduced in his compensation, transferred to a less desirable position within the company, or otherwise punished in relation to his job as a result of the events now at issue. No adverse employment action

11

whatsoever was taken against him.  Consequently, he cannot establish a recoverable injury based upon gender discrimination, even if one assumes that the incidents he complains of are sufficient to create a reasonable inference of gender discrimination that a jury could find, and further assumes that the nondiscriminatory reasons offered up by the Defendants for their conduct were shown to be pre-textual in nature.

The final matter to be considered is whether Ramsey has a current claim for constructive discharge from employment.  In his original EEOC complaint, Ramsey made reference to his belief that he had been constructively discharged from employment as a result of the actions of his co-workers and supervisors.  The complaint filed in federal court, however, does not include any reference to constructive discharge either on the form or the attached handwritten letter.

Even if one assumes that Ramsey has such a claim, a reasonable juror could not find on his behalf based on such claim.  A constructive discharge will be shown only if working conditions for the Plaintiff have become so difficult or unpleasant that a reasonable person in the Plaintiff employee's shoes would feel compelled to resign.  *Ford*, 305 F.3d at 554 (citing *Yates v. Avco Corp.*, 819 F.2d 630, 636-37 (6th Cir. 1987)).  Further, the Plaintiff must show that the Defendant employer intended and could reasonably have foreseen the impact of its conduct on the employee.  *Id*.  Suffice it to say, the record contains absolutely no evidence on which a juror might reasonably find that Ramsey's working conditions were so difficult or unpleasant that a reasonable person in his position would have felt themselves compelled to resign; nor has it been shown that Dillard's, Mayborg or the other Defendants intended or could have reasonably foreseen that Ramsey would leave work on Friday, Jan. 23, 2009, never to return.

One could reasonably say that Ramsey was subjected to rude, insensitive, unprofessional and counterproductive comments by his co-workers on two occasions. Unfortunately, such isolated occurrences are not uncommon in the workplace. Title VII, however, simply affords no remedy for these types of mundane, daily insults that are visited on far too many American workers. *See gen. Howard v. Bd. of Educ. Of Memphis City Sch.,* 70 Fed. Appx. 272, 280 (6th Cir. 2003)("[I]nsensitive comments may have been offensive, but do not rise to the level of actionable conduct under Title VII.")(citing *Oncale v Sundowner Offshore Servs.,* 523 U.S. 75, 81(1998)(Title VII should not be expanded into a "general civility code.")). Because Ramsey has failed to come forward with any proof upon which a reasonable juror could find that he has established a *prima facie* case of gender discrimination, the Court is compelled to dismiss his present lawsuit in its entirety. A separate final judgment shall be entered to that effect.

Copies to: Plaintiff, *pro se*
Counsel of Record